UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HORACE W. CRUMP,

        Plaintiff,                    Case No. 2:09-cv-194

v.                                        HON. ROBERT HOLMES BELL

PATRICIA CARUSO, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983 against Director of the Michigan Department of Corrections Patricia Caruso, retired Special Activities Coordinator (SAC) Dave Burnett, current SAC Michael Martin, MDOC Chaplain Radwan Mardini, former Straits and Chippewa Warden Mitchell Perry (now Deputy Warden at Newberry), Chippewa Chaplain James Bolton, and Chippewa Inspector Jerry Casey. Plaintiff asserts that Muslim prisoners attempted to stab him after they were informed by defendants Perry and Bolton that plaintiff had requested separate religious services and had filed grievances. Plaintiff claims that he was transferred by defendant Perry to a higher security level and denied medication, clean clothing and hygiene items for five days. On May 20, 2008, plaintiff claims that he was transferred to Newberry without medication, clean clothing and hygiene items for eight days. Plaintiff received his property on May 28, but claims that some of his religious and personal property were missing and that all of his legal property was missing. Plaintiff claims that his typewriter and footlocker were

damaged. Plaintiff claims that he later learned that his property had been seized by Perry and Casey. Plaintiff asserted that Bolton then began to circulate rumors about plaintiff "snitching" on prisoners.

On January 4, 2009, plaintiff claims that he was hit in the head by a blunt object by a Muslim prisoner and sustained a laceration. Plaintiff claims that he was treated for headaches and had trouble sleeping. He was referred to psychiatric services. Plaintiff claims that Perry transferred plaintiff, on January 8, 2009, without some of plaintiff's property including his medication. On February 27, plaintiff claims that he received his typewriter with files erased and that when he received his television it was broken. Plaintiff claims that he lost his appeal of his criminal conviction because he could not supply the Michigan Court of Appeals with transcripts that were destroyed with his legal property.

Plaintiff claims that as a Shi'a Muslim, he is subjected to harassment from other Muslim prisoners associated with the Taliban and Al Quada. Plaintiff claims that defendant Caruso knows about this behavior but refuses to take action. Defendant Burnett refuses to acknowledge the problem although he is aware that other Muslims do not believe that Shi'a Muslims are Muslims, and that other Muslims attempt to change plaintiff's beliefs. Plaintiff has alleged that he is a continuous victim. Plaintiff alleges that defendants Caruso, Burnett and Martin defer to Mardini, Musa and the Chaplancy Advisory Council regarding religious worship. As a result, plaintiff complains that he is unable to properly learn his religion. There exists no approved Shi'a vendors. According to plaintiff, the only Muslim materials that plaintiff can receive conflict with his beliefs.

Plaintiff alleges that he is being denied Halal, his religious diet. He has been forced to eat a vegetarian meal, although Vegetarianism is prescribed in the Quran. Plaintiff claims that his

2

health has suffered, causing a reduction of his good cholesterol and contributing to his obesity and poverty. Plaintiff claims that he suffers with acid reflux and has been prescribed Omerprazole.

Plaintiff alleges that he has been prohibited from practicing his religious beliefs and possessing items essential to Shi'a Islam. Plaintiff alleges that he cannot possess turbath (prostration tablets), miswak (tooth-sticks), aquiq (agate stone) ring and attar (prayer oil) because of a bogus asserted security concerns claim. Plaintiff alleges that prisoners are able to purchase similar items from the prison store such as a Star of David, crescent pendents, and containers of grease, lotions and oils.

Defendants Burnett, Casey, Caruso, Martin, Mardini, Perry and Bolton move to dismiss the claims against them for failure to exhaust administrative grievance remedies. A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Therefore, it is generally necessary for defendants to file a motion for summary judgment when asserting that plaintiff failed to exhaust his grievance remedies because the burden is on the defendants to prove lack of exhaustion.

Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate

submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Plaintiff filed grievance KTF 2008-03-386-20A complaining about his need for separate Shi'a Muslim services. Plaintiff did not exhaust this claim by submitting a Step III grievance. Plaintiff had filed two grievances regarding his missing property clams. NCF 2008-10-921-28c and KTF 2008-10-1063-28e. Both of these grievances were rejected at Step I for violating grievance policy for containing multiple issues and being untimely. Plaintiff appealed to the next Step without correcting his procedural errors. At each Step the finding was the Step I decision was correct. Plaintiff explained that "I am just exhausting my remedies. I don't care if it gets rejected

5

or denied. I just need a it numbered to prove that I filed it." Plaintiff failed to properly follow MDOC grievance procedures and therefore failed to exhaust his remedies. No other grievances that plaintiff filed are relevant to the subject matter of plaintiff's complaint. Accordingly, plaintiff did not properly exhaust these grievances.

For the foregoing reasons, I recommend that defendants Burnett, Casey, Caruso, Martin, Mardini, Perry and Bolton's motion for summary judgment (Docket #47) be granted[1]. It is further recommended that plaintiff's motion to depose a prisoners (Docket #27) and motion for a preliminary injunction (Docket #69) be denied.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

---

[1] A summons and complaint was never served on defendants Musa, Allen or any unknown parties.

LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: August 23, 2010